LONG, d.b.a. Weight Spot, Appellant,

v.

GRILL et al., Appellees.

[Cite as *Long v. Grill,* 155 Ohio App.3d 135, 2003-Ohio-5665.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 02AP–1373.

Decided Oct. 23, 2003.

Terry L. Thomas and Heather R. Gall, for appellant.

Murray, Murphy, Moul & Basil, L.L.P., and Brian K. Murphy, for appellees.

Per Curiam.

{¶ 1} Plaintiff-appellant, Robert O. Long, appeals from the November 18, 2002 decision and judgment entry of the Franklin County Court of Common Pleas sustaining a motion to dismiss by defendants-appellees, Simon Grill and B.V.P. Design, Inc. ("BVP"), for lack of in personam jurisdiction over defendants. Plaintiff assigns a single error:

"The trial court erred as a matter of law in sustaining defendant-appellee's motion to dismiss."

{¶ 2} Because the trial court had an adequate basis upon which to properly assert in personam jurisdiction over defendants, we reverse the trial court's judgment dismissing plaintiff's complaint.

{¶ 3} This case arises out of the purchase of sports-ball vending equipment and licenses to place the vending equipment at specific retail establishments in Florida, Ohio, South Carolina, Kentucky, and Alabama. The sports-ball vending machines dispense small, bouncy balls when the appropriate change is deposited into the machine. Long ("plaintiff") is a sole proprietor, doing business as "Weight Spot" and "Toyspot," with the principal place of business in Dublin, Ohio. Grill resides in California and is the president of BVP (together referred to as "defendants" unless otherwise noted), which is incorporated and has its principal place of business in California, and does business throughout the United States.

{¶ 4} In a complaint filed on July 30, 2001, plaintiff alleged that defendants made certain representations, personal promises, and guarantees to plaintiff. (Complaint ¶ 3–7.) Based on the representations concerning the exclusivity of the licenses and quality of the vending equipment, plaintiff entered into 19 separate purchase contracts with defendants from March through June 2001. (Complaint ¶ 9–27.) Plaintiff purchased approximately 127 vending machines and 127 placement licenses, prepaying for them with a credit card pursuant to the purchase agreements. (Complaint ¶ 28–29.)

{¶ 5} Plaintiff alleged that defendants breached each and every purchase contract by providing defective vending equipment and by selling to others the right to place vending equipment at the same locations where defendants had exclusively sold those locations to plaintiff. (Complaint ¶ 31, 33.) In the complaint, plaintiff asserted a cause of action for breach of contract and fraud against defendants, and plaintiff sought $200,000 in compensatory damages and $500,000 in punitive damages.

{¶ 6} On December 17, 2001, defendants filed a motion to dismiss pursuant to Civ.R. 12(B)(2), asserting that the trial court did not have personal jurisdiction

over the nonresident defendants because (1) defendants did not have sufficient "minimum contacts" with Ohio to subject them to Ohio's long-arm jurisdiction, and (2) such an exercise of jurisdiction by the Ohio trial court would violate defendants' due process rights under the Fourteenth Amendment to the United States Constitution. In the alternative, defendants asserted that the Ohio court did not have jurisdiction because, prior to the time the instant lawsuit was filed, defendant BVP had a lawsuit pending in California against plaintiff arising out of the same transactions and involving the same issues raised in plaintiff's complaint, and defendants obtained service upon plaintiff in the California action before plaintiff obtained service upon defendants in the instant Ohio action. Defendants argued that the California court therefore had the right, under Ohio law, to adjudicate the entire matter, and the Ohio action must be dismissed.

{¶ 7} In response to defendants' motion to dismiss, plaintiff filed a memorandum contra on January 3, 2002. First, plaintiff asserted that the Ohio court has personal jurisdiction over defendants because (1) defendants had sufficient contacts with Ohio to meet the requirements for personal jurisdiction, and (2) defendants' defense of a lawsuit in Ohio would not violate defendants' due process rights. Second, plaintiff asserted that the Ohio court has exclusive jurisdiction over this matter because plaintiff filed the Ohio action and obtained service on both defendants before plaintiff was served in the California action.

{¶ 8} On March 29, 2002, plaintiff requested an oral hearing on the motion to dismiss, but in an entry and decision filed on May 29, 2002, the trial court denied plaintiff's request for an oral hearing, stating that "an oral argument will not add to the assistance the parties have already provided to the Court for the resolution of the issues raised in Defendants' Motion to Dismiss." (Decision and Entry Denying Request for Oral Hearing on Defendants' Motion to Dismiss, May 29, 2002, at 1–2.)

{¶ 9} On November 18, 2002, the trial court issued a decision and judgment entry sustaining defendants' motion to dismiss pursuant to Civ.R. 12(B)(2). After considering the parties' pleading, arguments, and documentary evidence presented in support, the court determined that (1) defendants did not have sufficient minimum contacts with Ohio to invoke the trial court's long-arm jurisdiction over defendants, and (2) the California court invoked jurisdiction before the Ohio court, thereby precluding the Ohio court from asserting jurisdiction in this case. In making the latter determination, the trial court concluded that it did not have authority to hear plaintiff's complaint because service was apparently obtained in the California action prior to service being obtained in the Ohio action. It is from this judgment that plaintiff appeals.

{¶ 10} In the sole assignment of error, plaintiff asserts that the trial court's dismissal of the present action should be reversed because (1) plaintiff established

a prima facie case for the trial court to assert personal jurisdiction over defendants, and (2) plaintiff perfected service on defendants in California in the Ohio action, but defendants did not perfect service on plaintiff in the California action. Therefore, plaintiff contends, only the Ohio court has the right to exercise jurisdiction in this matter.

{¶ 11} "If the court determines its jurisdiction without an evidentiary hearing, it must view allegations in the pleadings and documentary evidence in a light most favorable to the non-moving party, resolving all reasonable competing inferences in favor of the non-moving party." *KB Circuits, Inc. v. BECS Technology, Inc.* (Jan. 18, 2001), Franklin App. No. 00AP–621, 2001 WL 40584. Where the court does not hold an evidentiary hearing, " 'the plaintiff need only make a prima facie showing of jurisdiction to withstand the motion to dismiss.' " *Cardinal Distribution v. Reade*, Franklin App. No. 02AP–1204, 2003-Ohio-2880, 2003 WL 21291050, quoting *Giachetti v. Holmes* (1984), 14 Ohio App.3d 306, 307, 14 OBR 371, 471 N.E.2d 165; *KB Circuits*, supra. This court's review of a trial court's decision granting a Civ.R. 12(B)(2) motion is de novo. Id.

{¶ 12} To determine whether an Ohio court has personal jurisdiction over a nonresident defendant, the court must determine (1) whether R.C. 2307.382 and Civ.R. 4.3 confer personal jurisdiction, and, if so, (2) whether granting personal jurisdiction would deprive the defendant of the right of due process of law under the Fourteenth Amendment to the United States Constitution. *U.S. Sprint Communications Co. Ltd. Partnership v. Mr. K's Foods, Inc.* (1994), 68 Ohio St.3d 181, 183–184, 624 N.E.2d 1048; *Cardinal Distribution*, supra.

{¶ 13} R.C. 2307.382(A)(1) states:

"A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's * * * [t]ransacting any business in this state[.]"

{¶ 14} Civ.R. 4.3(A) similarly states:

"Service of process may be made outside of this state, as provided in this rule, in any action in this state, upon a person [including a corporation] who, at the time of the service of process, is a nonresident of this state or is a resident of this state who is absent from this state * * * who, acting directly or by an agent, has caused an event to occur out of which the claim that is the subject of the complaint arose, from the person's * * * [t]ransacting any business in this state[.]"

{¶ 15} The language "transacting any business" in the statute and court rule is very broad. *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear Co., Inc.* (1990), 53 Ohio St.3d 73, 75, 559 N.E.2d 477; *Clark v. Connor* (1998), 82 Ohio St.3d 309, 312, 695 N.E.2d 751; *Columbus Show Case Co. v. CEE Contracting, Inc.* (1992),

75 Ohio App.3d 559, 564, 599 N.E.2d 881. The term "transact" as used in the foregoing phrase encompasses "to carry on business" and "to have dealings," and is broader than the word "contract." *Goldstein v. Christiansen* (1994), 70 Ohio St.3d 232, 236, 638 N.E.2d 541, citing *Kentucky Oaks Mall,* supra. "With no better guideline than the bare wording of the statute to establish whether a nonresident is transacting business in Ohio, the court must, therefore, rely on a case-by-case determination." *U.S. Sprint,* 68 Ohio St.3d at 185, 624 N.E.2d 1048.

{¶ 16} In support of their motion to dismiss, defendants presented an affidavit by defendant Grill, a copy of the summons and complaint filed by BVP in California against plaintiff, and a copy of a proof of service indicating that personal service of BVP's California summons and complaint was effected upon plaintiff in Daytona Beach, Florida, on August 10, 2001. In his affidavit, defendant Grill averred that plaintiff contacted him in March 2001 by telephone at BVP's office in California concerning the purchase of vending equipment. Grill further attested:

"7. Neither I nor BVP ever solicited, either in person or telephonically, the business of Mr. Long.

"8. All of the items that Mr. Long inquired about, and subsequently ordered, were normal stock products offered by BVP and none required any type of custom design or construction by BVP.

"9. From approximately March 2001 through May 2001, Mr. Long telephoned BVP and placed orders for vending equipment and supplies. All of the orders Mr. Long placed with BVP were received and accepted by BVP at its offices in Chatsworth, California.

"10. All of the contracts for purchase of vending equipment and supplies between Mr. Long and BVP specifically required the prepayment, via VISA or otherwise, at BVP's California offices prior to shipment.

"11. All of the shipments to Mr. Long were F.O.B. Chatsworth, California. All of the products ordered by Mr. Long were shipped to either Dublin, Ohio, Daytona Beach, Florida or Midland/Odessa, Texas.

"12. At no time have I or any other representative of BVP traveled to Ohio in connection with the sale of the vending equipment and supplies to Mr. Long or for any other business purpose.

"13. BVP does not own any property in Ohio or have any employees in the state. BVP has had absolutely no dealings at all with Ohio, other than shipping products F.O.B. Chatsworth, California to Dublin, in any way relating to the transaction between Mr. Long and BVP.

"14.   BVP has no offices in Ohio and it is not registered to do business in the State of Ohio. Lastly, neither I nor any representative from BVP has ever traveled to Ohio in connection with any BVP business.

"15.   I have never anticipated that any of my individual actions or those on behalf of BVP would require me to individually defend any lawsuit in Ohio or require BVP to defend any lawsuit in Ohio." (Dec. 14, 2001 Affidavit of Simon Grill.)

{¶ 17} In support of his memorandum contra defendants' motion to dismiss, plaintiff presented three affidavits.   First, an affidavit by plaintiff avers that the information set forth in the memorandum contra was provided by him and is true to the best of his knowledge.   Second, an affidavit by Eric Axene, an employee of plaintiff, avers that (1) defendants made the initial and all subsequent contacts regarding plaintiff's purchase of equipment, (2) more than 40 of the vending machines plaintiff purchased from defendants are located in Ohio, and (3) plaintiff was in Ohio, not Florida, on the date defendants purportedly served plaintiff in Daytona Beach, Florida, with the California lawsuit.   Third, an affidavit by Charles Holland, plaintiff's tenant at the Daytona Beach property where defendants claimed to have effected service on plaintiff, avers that plaintiff was not at the Daytona Beach property on the date stated in the proof of service filed by defendants in the California lawsuit.   In addition to the affidavits, plaintiff presented copies of proofs of service indicating that personal service of the summons and complaint in this lawsuit was effected on defendants in California on August 22 and 29, 2001.   In their brief on appeal, defendants acknowledge that service was made on them in August 2001 in this action.   On January 14, 2002, defendants filed a reply memorandum to plaintiff's memorandum contra their motion to dismiss.

{¶ 18} After viewing the pleadings and documentary evidence in a light most favorable to plaintiff, we find that sufficient facts were presented to demonstrate that defendants "transacted business" in Ohio pursuant to the requirements of R.C. 2307.382(A)(1) and Civ.R. 4.3.   Through their affidavits, the parties dispute whether it was defendants or plaintiff who initiated the parties' business dealings; defendant Grill contends that neither he nor BVP solicited plaintiff's business, and plaintiff, through employee Eric Axene's affidavit, contends that it was defendants who initially contacted plaintiff.   See *Columbus Show Case Co.* at 562, 566, 599 N.E.2d 881 (determining that a foreign corporation's solicitation of an Ohio company's business may be evidenced by an affidavit of an employee of the Ohio company indicating that the foreign corporation solicited the Ohio company's business in a telephone call to a different employee of the Ohio company).   Regardless, whichever party initiated the business dealings in this case, this factor, although relevant, is not in itself determinative as to whether the

nonresident defendants transacted business in Ohio for purposes of personal jurisdiction. See *U.S. Sprint,* 68 Ohio St.3d at 185, 624 N.E.2d 1048, citing *Wainscott v. St. Louis–San Francisco Ry. Co.* (1976), 47 Ohio St.2d 133, 1 O.O.3d 78, 351 N.E.2d 466 (determining that the "mere solicitation of business by a foreign corporation does not constitute transacting business in Ohio" for purposes of personal jurisdiction, but it may be considered as a relevant factor).

{¶ 19} Other, undisputed evidence reflects that, from March to June 2001, the parties communicated by telephone and entered into a series of separate agreements, memorialized in numerous written invoices and sales receipts, for defendants' sale of vending equipment and licenses to plaintiff. The written invoices and sales receipts, prepared by defendant BVP, expressly state that BVP sold the items to "Weight Spot" and "Bob Long" of Dublin, Ohio. The evidence reflects that several of the vending machines were shipped to Ohio, where plaintiff allegedly discovered the machines to be defective, and several of the placement licenses for Ohio locations were nonexclusive, contrary to representations purportedly made by defendants. Based on the evidence and applying a broad construction of the phrase "transacting any business," we find that defendants "carried on business" and "had dealings" with plaintiff, such that defendants transacted business in Ohio within the parameters of R.C. 2307.382(A)(1) and Civ.R. 4.3. See *KB Circuits,* supra.

{¶ 20} In addition to the requirements of the statute and court rule, in order for an Ohio court to have personal jurisdiction over a nonresident defendant, the court's exercise of its personal jurisdiction must comport with due process of law accorded by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 471–472, 105 S.Ct. 2174, 85 L.Ed.2d 528, quoting *Internatl. Shoe Co. v. Washington* (1945), 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95. Ohio state courts, like those in other states, are to evaluate all assertions of state-court jurisdiction according to the standards set forth in *Internatl. Shoe* and its progeny. *Shaffer v. Heitner* (1977), 433 U.S. 186, 212, 97 S.Ct. 2569, 53 L.Ed.2d 683.

{¶ 21} A nonresident defendant's ties must create a substantial connection or "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Internatl. Shoe,* supra. Requiring such minimum contacts protects a nonresident defendant "against the burdens of litigating in a distant or inconvenient forum." *World–Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490. However, "where the defendant 'deliberately' has engaged in

significant activities within a [s]tate * * * or has created 'continuing obligations' between himself and residents of the forum * * * he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws[,] it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." (Emphasis added.) *Burger King* at 475–476, 105 S.Ct. 2174, 85 L.Ed.2d 528.

{¶ 22} A showing that the corporation has no physical presence in the state does not automatically defeat jurisdiction of a court:

"Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Columbus Show Case* at 565, 599 N.E.2d 881, quoting *Burger King* at 476, 105 S.Ct. 2174, 85 L.Ed.2d 528.

{¶ 23} This court has found that "the Ohio Supreme Court contemplates Ohio's courts having jurisdiction to the full extent permitted by federal due process standards." *Cardinal Distribution,* supra, citing *Columbus Show Case.*

{¶ 24} Construing the evidence in a light most favorable to plaintiff, we conclude that the evidence before the trial court was sufficient to survive a motion to dismiss based upon the demonstration of sufficient minimum contacts by defendants with Ohio to satisfy due process concerns. The evidence establishes that the nonresident defendants had a continuous business relationship with the Ohio-situated plaintiff over a period of three months, repeatedly supplying plaintiff with vending equipment, together with licenses for the equipment, for shipment to locations in Ohio. Thus, the parties' course of dealing consisted of more than a "one-shot deal" or a single, isolated act, which courts have found generally insufficient, alone, to establish sufficient "minimum contacts." See *Hwy. Auto Sales, Inc. v. Auto–Konig of Scottsdale, Inc.* (N.D.Ohio 1996), 943 F.Supp. 825, 830–831, and cases cited therein (determining that merely entering a contract with a resident of the forum state, without more, is insufficient to automatically establish sufficient minimum contacts). But, see, *KB Circuits,* supra (finding a single contract for shipment of goods, combined with the foreign corporation initiating the business deal and frequent communication between the foreign and Ohio-based corporations, establishes sufficient minimum contacts for Ohio to assert personal jurisdiction over the foreign corporation). Moreover,

plaintiff presented evidence that of 127 vending machines purchased by plaintiff, many of them are allegedly defective and located in Ohio, giving rise to plaintiff's cause of action. We find that defendants' activities are sufficient to satisfy the minimum-contacts standard of *Internatl. Shoe* and its progeny, and the Ohio court's exercise of jurisdiction would not offend defendants' due process rights under the Fourteenth Amendment.

{¶ 25} Having thus decided, the question remains whether the Ohio trial court has the right to adjudicate this matter where the California court invoked its jurisdiction first, based on service being apparently accomplished in the California action prior to service being obtained in the present action. The Ohio trial court answered the question in the negative and concluded that it does not have the authority to hear this case.

{¶ 26} Plaintiff asserts that the Ohio trial court, not the California court, has jurisdiction over the instant matter because it was the first court in which both filing and proper service were completed. Plaintiff contends that service of process was perfected in Ohio but not in the California action because evidence presented to the trial court shows that plaintiff was not present in Florida on the day he was presumably served with the California summons and complaint. Therefore, plaintiff argues, the California court does not have jurisdiction to decide this matter, which it recognized in staying the California action pending resolution of this matter by the Ohio court.

{¶ 27} We conclude that, even if the California court properly invoked jurisdiction in this matter before the Ohio court invoked jurisdiction, the pendency of the action in California, involving the same subject matter and the same parties, does not preclude the Ohio trial court's exercise of jurisdiction to adjudicate plaintiff's complaint. The "rule of priority of jurisdiction" applies to actions pending in different Ohio courts that have concurrent jurisdiction; it does not apply when an action is pending in another state. *Hoppel v. Greater Iowa Corp.* (1980), 68 Ohio App.2d 209, 22 O.O.3d 308, 428 N.E.2d 459; *Commercial Union Ins. Co. v. Wheeling Pittsburgh Corp.* (1995), 106 Ohio App.3d 477, 486, 666 N.E.2d 571, appeal not allowed, 74 Ohio St.3d 1464, 656 N.E.2d 1299; *Neff Motivation, Inc. v. LaGrou,* Darke App. No. 01–CA–1560, 2002-Ohio-2788, 2002 WL 1251832, appeal not allowed, 97 Ohio St.3d 1482, 2002-Ohio-6866, 780 N.E.2d 286. In the circumstances here, involving a pending action in a sister state, the Ohio trial court's options were either to (1) grant a stay of the Ohio action pending the California court's resolution of its action, or (2) maintain the action in Ohio. *Hoppel* at paragraph two of the syllabus; *Commercial Union; Neff Motivation.* Dismissal of plaintiff's action was not an option at this stage of the proceedings. Id.

{¶ 28} In the final analysis, we conclude that the trial court erred in dismissing plaintiff's complaint. Plaintiff's assignment of error is sustained, and the trial court's judgment dismissing plaintiff's complaint is reversed. Because the California court has issued a stay of its action pending the Ohio trial court's resolution of this action, the trial court should exercise its jurisdiction in this case and adjudicate plaintiff's complaint.

Judgment reversed
and cause remanded.

PEGGY BRYANT and WATSON, JJ., concur.

LAZARUS, J., dissents.

LAZARUS, Judge, dissenting.

{¶ 29} Being unable to agree with the majority, I respectfully dissent.